YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* GEORGE
W. WEST, TAX COLLECTOR.

1. TAXATION.  *State revenue agent.  Right of action.*  Laws 1894, *p.* 29.
   *Laws* 1890, *p.* 25.  *Code* 1892, §§ 4190, 4191.

   The act of 1894 (laws, p. 29) removes the inhibition of previous legis-
   lation against suits by the state revenue agent for unpaid taxes
   until the expiration of the fiscal year in which they accrued, and
   he may sue whenever the taxes are "past due and unpaid."

2. SAME.  *Statutory exemption.  Duty of collector.*

   A tax collector is without authority to enforce payment of taxes con-
   trary to the terms of a statute exempting the property owner from
   liability therefor, unless the invalidity of the statute has been ju-
   dicially ascertained.  Failure to sell on the regular sale day, and
   other facts considered, as showing recognition by a collector of
   his want of authority to enforce payment pending a suit by the
   revenue agent to test the validity of the exempting statute.

3. SAME.  *Constitutional law.  Injunction.  Case.*

   The constitutionality of a statute exempting a property owner from
   liability for taxes, is a question which a tax collector, as a merely
   ministerial officer, cannot determine, and pending a proceeding by
   the revenue agent, brought after the taxes were past due and un-
   paid, for the determination of such question he may be enjoined
   at the instance of the property owner from proceeding to enforce
   payment.

4. SAME.  *Premature suit.*

   A suit for taxes past due and unpaid begun by the state revenue
   agent on December 16, and before any proceedings by the collector
   to enforce payment, is not prematurely brought.

FROM the chancery court of Sharkey county.

HON. WILLIAM C. MARTIN, Chancellor.

The railroad company, the appellant, was complainant,
and West, the appellee, defendant in the court below.  The
appeal was from a decree dissolving an injunction sued out
sued out by the appellant to enjoin the appellee, as tax collector

of Sharkey county, from selling the railroad of appellant, situated in said county, for the state and county taxes of 1899, under an order of the board of supervisors, made on the first Monday of June, and ordering the sale on the first Monday of July, 1900. The original bill set up that on the sixteenth of December, 1899, Wirt Adams, state revenue agent, "a duly authorized officer of the state," brought suit for, among others, the same identical taxes, in the circuit court of Hinds county, and on January 27, 1900, recovered judgment for the same against the appellant, from which judgment an appeal was taken, which is now pending in the supreme court of Mississippi.

The bill also claimed an irrepealable statutory appropriation of the taxes to the construction debts of the road. To this bill an amendment was filed by leave of court, which alleged that C. H. Walton was sheriff of Sharkey county in 1899, when said taxes became due, and was made a party to said revenue agent's suit, No. 3338, as the law required, and entered his appearance and made no objection to the prosecution of the suit, and, further, that in 1898 or the early part of 1899 the appellant had filed an injunction bill against said Walton and other sheriffs, in the circuit court of the United States for the southern district of Mississippi, to enjoin the collection of the taxes on the same property for the year 1898, and that said Walton and the sheriffs had each filed answers, denying that they had intended to take any steps to collect the taxes, and averring that the entire matter was in the hands of the revenue agent, and that this was done to deprive said United States court of jurisdiction and to induce it to refrain from entertaining said suit. The answer denied that the appellee was a party to said suit No. 3338, or ever appeared in it.

The order of the board of supervisors for the sale recited that the tax collector received payment of the levee taxes alone, and did not require payment of the state and county taxes, "because of a mistaken impression on the part of the tax collector

that said railroad was not liable for state and county taxes, and such mistaken impression caused the collector to fail to sell said railroad at the time appointed by law." This order was made on the report of the sheriff filed on May 27, 1900, and on exhibits and evidence submitted therewith.

Neither the Yazoo & Mississippi Valley Railroad Co. nor the revenue agent were cited or made parties to the said proceedings before the supervisors. The bill points out defects in order and advertisement for sale, and claims that appellant had outside property, and a sale of a part of the railroad was unnecessary and unlawful. The answer sought to explain and deny the above paragraphs of the bill, but that portion of the bill which claimed an irrepealable appropriation of the taxes to the construction debts of the road was not noticed by demurrer or answer. The motion to dissolve was not made for want of equity in the bill, but alone on bill and answer and suggestion of damages.

*Critz, Beckett & Kimbrough*, for the appellant.

It is well known that, on account of some defects and objections pointed out by this court to the revenue agent act of 1890, it was amended as incorporated in the code of 1892, as chapter 126, so as to meet those objections, and when this court again decided, in the Tonella case, in 70 Miss., that the part of chapter 126 which allowed the revenue agent to make assessments was unconstitutional, great care and much consideration were bestowed in framing the amendatory act of 1894, so as to make it unassailable, and in numerous decisions since by this court it has been universally sustained. Its constitutionality, both state and federal, was directly attacked in the chancery case reported in *Yazoo, etc., R. R. Co.* v. *Adams*, 73 Miss., 648, which, after the assessment was made and suit brought on it in the chancery court, was again persistently and violently attacked, but was, on appeal, fully sustained by this court in case No. 9358, of the same style, decided March 27, 1899, and reported in 25 So. Rep., 355–358, and 77 Miss.

It was the evident purpose, in framing this act of 1894, not to go too much into details, but to so shape it generally as to confer on the revenue agent all power that it was possible to confer on him under the constitution, and the full extent of this power was not attempted to be defined, but was purposely left to be settled in each case by judicial construction, on the particular facts of that case. For this purpose it was provided that "he shall have a right of action and may sue at law or in equity in all cases where the state or any county, municipality or levee board has the right of action or may sue." Laws 1894, p. 29, sec. 2. This is certainly broad language, and *in totis totidem* has been, on a fair, and, as this court called it, "a vigorous assault," fully sustained by the court, which says, "we are, therefore, of the opinion that the legislature had the right to create a state revenue agent and to arm him with the power to bring any action which the state or any of its political subdivisions could bring." *State* v. *Hill*, 70 Miss., 112, 113.

And it is expressly provided in § 3747 of the code of 1892 that taxes are "a debt" and "may be recovered by action."

The cases of *State* v. *Taylor*, 68 Miss., 730, and *State* v. *Thibodeaux*, 69 Miss., 92, to the effect that the revenue agent cannot sue until the tax collector had refused or knowingly failed to collect, are not necessarily controlling here, for the reason that they were construing the act of February 22, 1890, which expressly provides for a suit by the revenue agent only, "if it shall appear that, for any reason, there has been a failure to enforce the law and collect all revenues due." This is in the second section, and the third section provides for proceedings under it "in the manner and on the terms prescribed" in the second section. Laws 1890, pp. 26, 27, secs. 2, 3.

Here there was little or no ground for diversity of opinion. The statute on its face only provides for a suit on default of the regular officer, and this must "appear"—that is, must be alleged and proved by the revenue agent—because the officers were not required to be made parties except in suits directly

against them, and, the matter being *ex parte*, an affirmative right of action was required to be shown.

In the substituted act, chapter 126 of the code of 1892, instead of basing the right of action on the default of the officer, it was confined within more narrow limits, and the revenue agent could only sue under § 4191, "if the fiscal year in which the same ought to have been paid have expired."

Now, the act of 1894 takes this condition about the expiration of the fiscal year out of section 2, which corresponds in other respects substantially with said § 4191, and transposes it almost bodily into section 3, which otherwise corresponds in subject-matter with § 4192 of the code, in reference to property that had " escaped taxation by reason of not being assessed." Laws 1894, pp. 29, 30, secs. 2–4. This was to meet fully the objection in the Tonella case and leave no question of invading the constitutional rights of the assessor. But it was omitted from section 2, and it is a cardinal rule of construction that, if a statute is amended or re-enacted, and material words are added or omitted, it must be presumed to be intentional, and due effect must be given. *M. & O. R. R. Co.* v. *Weiner*, 49 Miss., 739; *State* v. *Order of Elks*, 69 Miss., 895; *Monaghan* v. *State*, 66 Miss., 513; *James* v. *Elder*, 23 Miss., 134.

The status, under the act, substitute and amendment, then stands thus: Under the act of 1890 the revenue agent could only sue when it was made "to appear" that the tax collector was in default, and the tax collector was not required to be made a party; under § 4191 of the code of 1892 he could not sue till the fiscal year had expired, while under the existing law, as fixed by the act of 1894, he can sue, without limitation as to time, "for all past due and unpaid taxes," etc., but, under § 4200 of the code, is required to make the tax collectors parties, and, "if it shall appear that the failure of the taxpayer to properly pay his taxes was caused by any wilful default or negligence of the tax collector, judgment shall be

rendered against the defaulter or defaulters for the amount of the compensation of the revenue agent." The object of making a person a party to a suit in which his interests are involved is that he may make defense. It is his constitutional right.

There was no want of jurisdiction in the court. The subject-matter and the parties are all before it. If the suit is premature, it is like suing on a note or any other obligation before maturity, before the cause of action accrues—a matter to be pleaded in abatement or raised by demurrer, and the decision a question of error or no error, and not a question of jurisdiction. The sheriff could either have set up that he was ready and willing to enforce the law, and had not been allowed a chance, or that he had not been in willful or intentional default, if the time for him to collect had expired, or that it was a railroad which claimed to be exempt from taxation, and he either thought the claim was good, or was doubtful and he did not care to risk the enormous damages and costs to himself and his bondsmen which would be caused by a levy on the rolling stock, and a stoppage of the operations of a concern of such magnitude, but preferred to lose his commissions, and leave it to the revenue agent to test the liability in a direct suit without such great risk. These and other proper defenses could have been set up, and it would be for the court to pass on their sufficiency.

As a matter of fact, when the act of 1894 was passed the suit of the revenue agent against the Georgia Pacific Railroad Company had just been tried in the federal court, and the suit decided by this court on June 20, 1898, against the Yazoo, etc., R. R. Co. and Illinois, etc., R. R. Co. was pending in the circuit court of Hinds county, as No. 2788, and it was evidently the object of the legislature to so frame the act of 1894 as not to embarrass the revenue agent in the course of this litigation. The first suit was brought under the code of 1892, as the record in this court will show.

The rules of decision when a case goes to the supreme court of the United States through the circuit court of the United States, and when it goes through the supreme court of the state are, in some cases, widely different, as shown in the case of *Central Land Co.* v. *Laidley*, 159 U. S. R., and more strikingly illustrated in the late case of *Los Angeles* v. *Los Angeles*, 177 U. S., 558, 575, and as the records of this court will show, the railroad companies of late have attempted, by every device that human ingenuity could invent, to get into the circuit court of the United States, and it has been an object of constant care and watchfulness on the part of the revenue agent to keep them out. There was no chance to get there without the co-operation of the sheriffs, and this the old sheriffs have persistently and consistently refused to give, declining to distrain or levy, and filing disclaimers in the United States circuit court in the injunction cases there that they had not levied and did not intend to levy. This court can easily see the distinction that, when the revenue agent sues, the defendants can never enjoin him nor move the case to the federal court, but when the sheriffs attempt to levy or distrain, there is no difficulty about enjoining them in the federal court. It has been a struggle, and a hard struggle, on both sides, and there is no harm in making that fact public now. Both sides have heretofore jealously guarded the dark secret as to why one wanted to get in and the other wanted to keep out of the federal court, but we opine that as a matter of fact each side has all the time at least suspected the purposes and aims of the other.

As before stated, the court had jurisdiction of the parties and the subject-matter, and the question of whether the suit is properly brought or not is a question of error or no error, and not one of jurisdiction, and hence the decision cannot be assailed collaterally. The law, code 1892, § 3851, requires the outgoing to turn over to the incoming sheriff his office, and all its books, papers and dockets, and there is such a succession and privity of estate between them that the new sheriff takes *pen-*

*dente lite*, and is bound by the result of the suit. If the new sheriff represents the state, so did the old sheriff. The new one takes the office *cum onere*, with all the burdens attaching to it by law, or the act of the old sheriff.

Any defense he could set up against the revenue agent, including the right to sell the railroad, and prematurity of the suit for any other cause, the old sheriff could have set up, not only before the expiration of his term of office, but afterwards, to protect himself against a judgment for the commissions of the revenue agent, and the new sheriff is bound by the suit and its results because the old sheriff is bound. *Chickasaw Co.* v. *Clay Co.*, 62 Miss., 325, 338–340.

There is no doubt but that an officer is bound by a judgment against his predecessor in office or even against an officer in another department. *Vance* v. *Wesley*, 85 Fed. Rep., 157; *New Orleans* v. *Citizens' Bank*, 167 U. S., 371.

Notwithstanding the old sheriff had vacated the office, he was still entitled to defend the suit, for it involved not only his loss of commissions, but the penalty denounced against a willful neglect of duty under § 4200, to pay the commissions of the revenue agent, and save the state whole.

Every presumption, on a collateral attack, is in favor of the judgment. If the old sheriff had set up that the railroad company owned detached lands, and had no personal property other than its rolling stock, and that the detached lands could not be seized or sold till after January 15, that would have been a good defense, but it would have been a question of fact, and subject to dispute by the revenue agent, and if it had been set up and disputed and the issue found in favor of the revenue agent, no one would contend that it was not *res adjudicata*, and the fact that it was not set up does not render it less so, for a judgment is *res adjudicata* not only as to everything which was actually in issue and decided but also as to everything that could have been put in issue and decided. And in a collateral attack it cannot be shown that anything was not

actually in issue that could have been put in issue. As to those things it is a sealed book, sealed with seven seals, and cannot be opened.

The new sheriff is not the general administrator and representative of the state. His duties are restricted within defined and narrow limits, and he has no right or power to ignore or disregard the courts of the country, and set up his own standard of action. He is not invested with an open sesame to a sealed judgment.

We deny that it is the duty of a sheriff to disregard and violate an express statute exempting property from taxation. He is but a ministerial officer without judicial functions, and even without the power to bring suit for taxes. He is required to act in a summary manner and seize and sell the property without notice and without trial. His duties are entirely statutory. He could not, as we have shown, collect the taxes at all on a railroad in his county, if that duty was devolved on the auditor or some one else. And if the railroad is exempted from taxation entirely, it is a command to him not to collect the taxes. In the case in controversy the statute expressly provided that on a certain affidavit being made by the railroad company, "it shall be the duty of the tax collector in every county, in each and every year, to give to said company a receipt in full for the amount of said taxes." It is true the sheriffs, in the absence of the Mississippi Mills and Lambert cases, might have refused to give this receipt, and instead have distrained for the taxes, but they were not required to do this, have never done it, and no one in this state has ever dreamed of holding them liable. He is but a ministerial officer, and Judge Cooley has well said, "An officer may decline to proceed in the collection of a tax illegally levied. . . . But he takes upon himself a great responsibility when he assumes to question the validity of a statute or the acts of his superiors. In any case he ought to be the last person to raise the question, and then only when

necessary for his own protection." Cooley on Tax. (2d ed.), 710.

A ministerial officer is not expected or required to pass on the validity or constitutionality of a statute. *Smyth* v. *Titcomb*, 31 Me., 285–287; Mechem on Public Officers, p. 345, § 523; *Wiley* v. *Suckler*, 179 U. S., 66, 67; *Mayson* v. *Mo.*, 179 U. S., 333.

The auditor has never refused to give the sheriffs credit for these taxes, and hence it has never been necessary for his own protection for a sheriff to refuse to obey this statute, and with the Mississippi Mills and Lambert cases in force, it would have been a positive violation of his duty to refuse. It is true this court has overruled these cases so far as this railroad is concerned, but writs of error have been sued out from the supreme court of the United States to test this question, and the writs of error in both cases were granted by the chief justice of this court. So the taxes cannot be collected by judgment and execution, and yet this sheriff is actually claiming a right to collect them without either. The question has not been settled. It is the duty of a sheriff to disregard a statute which has been declared unconstitutional, but no duty devolves on him to test its constitutionality. That power and duty devolves on the revenue agent, who is authorized to sue, while the sheriff has no such power.

It is a part of the history of the state, made public by the legislative journals and by the newspapers all over the state, and in the sister states, that at the last session of the legislature the railroad company endeavored to get through that body a compromise of these taxes, including the taxes in question, and that the legislature rejected the compromise at the instance and on the protest of the revenue agent, and then was the time to have disputed his authority to deal with the taxes of 1899, and yet his right was conceded by the legislature and every one else. It was a legislative recognition of his right, a legislative sanction of his course in the past, and a legislative authority for

him to proceed to a final result in the collection of these taxes.

And when the old sheriff recognizes his right, and the circuit court confirms it, and the legislature sanctions it, and this court approves it, as it has done in the past, and grants writs of error from the supreme court of the United States, in order to settle this much vexed question, we think it is out of place for this sheriff to rush suddenly on the great scene and disturb and frighten everybody with his little tempest in a teapot.

The order of the board of supervisors, which is made a part of the answer, finds that the reason the sheriff did not collect the state and county taxes at the same time he collected the levee taxes, was "because of a mistaken impression on the part of the tax collector that said railroad was not liable for state and county taxes."

Taxes are delinquent on and after December 15 of each year, and the collector is required to collect the state and county taxes together.   Code 1892, § 3801.

Sharkey county is in the "Mississippi levee district," and the tax collector is expressly required to collect the acreage and *ad valorem* taxes "in the same manner and at the same time and under the same terms and conditions as is now, or may hereafter be provided by law, for the collection of the state and county taxes."   Laws 1896, ch. 156, §§ 7–10, pp. 169, 170.

Hence the sheriff had no right to collect the levee tax separately, or to collect it and leave the state and county taxes uncollected, and when he did this, the revenue agent clearly had a right to intervene, and collect the state and county taxes. All the taxes became delinquent on December 15, and it is presumed that those that were paid, were paid before then, and paid to the old or outgoing sheriff, and especially as every pleading is presumed most strongly against the pleader.   When the sheriff accepted and receipted for the levee taxes alone, and the state and county taxes then became delinquent on December 15, the revenue agent had the right to proceed at once to col-

lect under his duty " to collect all past-due, and unpaid taxes,"
in section 2 of the laws of 1894.   How long was the revenue
agent to wait ?  Not till the fiscal year expired, for the act of 1894
does not require that.   Then, how long ?   Till the time of the
exemption expired ?  No law required that.   Till the sheriff
got rid of the impression that the railroad was exempt from
state and county taxation ?   How long would that be ?   It would
be when the revenue agent convinced the sheriff that the rail-
road was not exempt, and that was exactly what he was trying
to do, and the sheriff was made a party, in order that he might
give this excuse to the circuit court, which had the power and
authority to adjudicate it, instead of to the board of supervisors,
which had no such power, and if it had, neither of the inter-
ested parties, the railroad company or revenue agent, were
made parties to that proceeding, and certainly without their
presence the board of supervisors could adjudicate nothing.

Still further.   This order of the board shows that the sheriff
believed the property exempt and did not collect the taxes.
Now, the original bill pleads the original suit No. 3338 in the
circuit court, which is pending here on appeal.   It is No. 9742
in this court.   The plea of the defendants in that case, which
this court can see on inspection, states that the sheriff not only
did not collect the state and county taxes, but that he received
from the defendant the affidavit provided for in its charter, and
gave the receipt therein required, thus incapacitating and
estopping himself individually from proceeding further, and
conferring on the revenue agent a right to proceed, for of
course while the sheriff might estop himself, he could not estop
the revenue agent.

Further still, the bill shows that the sheriff had filed an
answer to the injunction suit in the federal court for the taxes
of 1898, in which he stated that he had not proceeded, and did
not intend to take any steps to collect the taxes on this prop-
erty, but intended to leave it to the revenue agent.

None of these things are controverted or denied in the an-

swer or in any other manner, and, hence, must be accepted as true.

Now, whether the sheriff was excusable for being under the impression that the property was exempt, or for not collecting the state and county taxes with the levee taxes, or for accepting the affidavit and giving the receipts, or for leaving the collection of these disputed taxes to the revenue agent, or for depriving the federal court of jurisdiction, or for not being willing to risk an enormous cost bill against him in the federal court or state court, were all matters going to the question as to whether he should be taxed with the commissions of the revenue agent, over which matters the circuit court had full and exclusive jurisdiction, and none of them militated against the right of the revenue agent to sue, but, on the contrary, all of them clearly and undoubtedly gave him that right.

The sheriff and tax collector was made a party, as required by § 4200 of the code, and entered his appearance, and, as the bill shows, made no objection to the suit by the revenue agent. The bill also shows that in the injunction suit in the federal court the sheriff had filed an answer denying an attempt or intention to levy or collect the taxes, and asserting his intention to leave this to the revenue agent, as he had done before; the exhibit to the answer in this case shows that the sheriff had received and receipted for the levee taxes alone, because he believed the railroad was exempt from state and county taxes, and the plea in the circuit court suit No. 3338, now pending in this court on appeal as No. 9742, shows that the sheriff received the affidavit provided for in the charter, and gave the receipt therein provided for, thus recognizing the validity of the exemption.

We contend that these things and the fact stated in said plea, gave the revenue agent a right to sue, and also constituted a good excuse for not taxing the sheriff with the commissions of the revenue agent, but whether they did or not was

a matter to be determined, and could have been determined by the circuit court in that suit.

If the circuit court, and this court on appeal, had decided that the railroad was exempt from state and county taxes, will any one contend that such decision would not be *res adjudicata ?* If the circuit court had taxed the sheriff with the commissions of the revenue agent, the present procedure would never have been thought of. The present case must rest on the untenable basis that, because the circuit court adjudged the property to be liable to taxation, and then did not tax the old sheriff with the commissions of the revenue agent, that the new sheriff has a. right to go before the board of supervisors of a county, and, in an *ex parte* proceeding, exercise supervisory powers over the circuit court. There was no want of jurisdiction in the circuit court. It had full jurisdiction of the subject-matter and the parties, and full power to declare the property exempt or liable, and full power to determine that the suit had been properly or prematurely brought, and full authority to tax the sheriff with the commissions of the revenue agent or to determine that his excuse for not seizing the property was sufficient. All these things are expressly committed by law to " the proper court," and its decision is necessarily a question of error or no error, and not one of jurisdiction, and hence cannot be attacked collaterally.

But it may be answered that a party is not bound by a suit. to which he is not a party, and this is the defense, and the only defense, set up in the answer, which overlooks the fact that there are certain well-defined exceptions to the rule. One of these is that the person seeking to invoke the rule must show that he was a necessary party and that it affected his individual rights, for no one can deny that a judgment, as between the parties to it, is binding on all the world. If A obtains a judgment against. B, it is binding on all the world both as to the fact and the amount of the judgment. No one can gainsay the fact that B owes A the amount of the judgment, or that A has a judgment.

against B for it. The only place where C or the balance of the world can come in is where A attempts to affect the individual or personal rights of C. If, for instance, A levies his judgment on the land of C, then C can set up such individual or personal rights as he has, but he cannot dispute the fact that B owes A the amount of the judgment. So, in the present case, the new sheriff can set up such individual rights as he may have, but he cannot dispute the fact that the railroad is liable for the taxes, and that the revenue agent has a judgment for the amount, nor the more important fact, that, as against the old sheriff, the revenue agent had a right to sue when and as he did.

Other exceptions are that, when a party acquires an interest in the subject-matter of the suit *pendente lite*, or where his interests are sufficiently represented by a trustee or other representative—administrator, executor or otherwise—he is bound without being made a party.

In the circuit court case the new sheriff came into office on the first Monday of January, and the judgment was rendered on January 27, 1900. In ordinary cases, where an officer represents the interests of the state, it is provided that "actions by or against public officers in their official character . . . shall not abate on account of the change of the person occupying such position, but may be revived and proceeded with in the name of the successor of such person." Code 1892, § 669. This was merely declaratory of what was the common law before it. *Hardee* v. *Gibbs*, 50 Miss., 806; *McDuff* v. *Beauchamp*, 50 Miss., 537–539.

The statute and that rule have no application to a case like No. 3338, because the old sheriff cannot be succeeded or displaced, notwithstanding he may have gone out of office, for, if he is found to have been in "wilful default," he is to be taxed with the commissions of the revenue agent, and thus the state indemnified and made whole. There is no law to make the new sheriff a party. The question is not whether the new sheriff

has been in default, but whether the old one has been, and the diligence of the new sheriff cannot affect or efface the want of diligence or default of the old one. The new sheriff is attempting to proceed on an entirely erroneous principle. The question at issue is the diligence or default of the old sheriff, and that is *res adjudicata.*

The new sheriff is not entitled to the commissions as a matter of right. The old sheriff had a prior claim, and if he had collected the taxes, either voluntarily or by distress, the new sheriff would have been entitled to nothing. He is only entitled to commissions when he collects, and that is entirely statutory, as held in the Love case, *supra,* in 69 Miss. He is not the general representative of the rights of the state. Those general rights are distributed among different departments, a large portion of them being lodged in the revenue agent, and in order that the state may be fully protected as the law now stands, wherever the interest and duty of the revenue agent are likely to conflict, he is required to make that person a party whose interest is against his own and identical with that of the state. This opposing interest is not lost by the expiration of the term of office of the old sheriff, but continues unabated and undiminished till final judgment. There is no reason why the old sheriff should be displaced, but every reason why he should not be. His own interest is involved, and the new sheriff has no authority to represent or defend that.

Another exception to the rule about making parties is that where a trustee or other party represents all interests in common, he is the only necessary party, and all others are bound by what binds him. *Kerrison* v. *Stewart,* 93 U. S., 155, s.c. 123 U. S., 233, 124 U. S., 169, 125 U. S., 591.

The authorities illustrating this principle are so numerous and so well understood that further citation is unnecessary. A good illustration is the case of *Chickasaw County* v. *Clay County,* 62 Miss., 325, 338–340. There Clay county was created out of portions of Chickasaw and other counties, and the act of

creation provided that it should pay its proportion of the debts of the counties out of which it was created. Chickasaw was sued and a judgment rendered against it on one of those old claims, and it then sued Clay for contribution to this judgment. Clay set up that it had not been made a party to the suit, and that it was not a valid debt against Chickasaw county, but the court held that in the suit against Chickasaw, it represented all interests, and that Clay county was bound because Chickasaw was bound. So here the old sheriff represented all interests antagonistic as between the state and the revenue agent, his own, those of the state, and those of his successor, and they are all bound through him and because he is bound.

If we apply the maxim that ignorance of the law excuses no one, and that a tax collector is bound to know that a law is unconstitutional, and to ignore or violate it, then this new sheriff stands before the court, by his own confession, in deliberate and wilful default. If he could decline to sell one piece of property because he thought it ought not to be sold, he could for the same reason, decline to sell two pieces, or three, or all on the assessment roll, if he thought it was a bad crop year, or the times were unpropitious. In this way he could postpone the sale of part or all the lands, which is exactly what this court says he cannot do, and that the board cannot even authorize him to do in advance, and much less relieve him from liability afterwards, as is attempted here. This court announces most emphatically that "a tax collector who fails to advertise and sell lands delinquent for taxes at the time prescribed by law, can obtain no relief from responsibility by any order of the board of supervisors, which cannot thus thwart the law." In that case the sheriff had failed to advertise. Here he failed to either advertise or sell. *Brougher* v. *Conley,* 62 Miss., 359, 361.

So whatever rights the new sheriff might have had if he had acted seasonably, yet if he has delayed, until at the time he proposes to act, he is in default, and the revenue agent then

has a right of action, he will not be permitted to come in and evade his default by putting the revenue agent in the wrong. If there was no such character of personal property as the sheriff was authorized to seize and sell under § 3884, and he was required to advertise the roadbed under § 3811 after January 15, and to sell it on the first Monday of March, under § 3813, he has done neither and is in double default, and loses all authority to sell at all by virtue of his office, for this court has expressly held that a sheriff is not entitled to collect delinquent taxes by virtue of his office. *State* v. *Harris*, 52 Miss., 686.

The revenue agent is the regular delinquent tax collector, vested with authority to collect ''all past-due and unpaid taxes,'' and if the sheriff attempts to collect delinquent taxes, he must show some express statute for it, as held in the Harris case, *supra*. He is authorized by law to go on and collect the delinquent personal taxes, but his only authority for selling real estate for delinquent taxes which ''through any inadvertence or oversight'' was not sold on the first Monday of March s § 3850, and by order of the board of supervisors, and ''land liable to such sale,'' and we do not think any land is liable to such sale, where the revenue agent, the regular, authorized agent of the state, is suing for the taxes, and endeavoring to establish that very thing, viz.: its liability to sale.

The judgment was rendered on January 27, 1900. If the new sheriff had advertised after January 15, he would have been enjoined on the ground of the pendency of this suit, and forced to come into it, if he was entitled so to do. If he had advertised after January 27 and more than three weeks before March 5 (first Monday), he would still have been enjoined on the ground of the judgment obtained, and if the judgment was void as to him, because he was not a party, as he claims, he could still have gone into the circuit court or into this court, and demanded that it be opened up as to him. But when he waits till after March 5, a different question arises. He has

then lost the right to sell at all. He could not then demand admission into the case, because he would have no standing in court. And it has often been decided that a court will neither entertain nor retain a suit where the right of the party has expired. In the case of *Ex parte Baez*, 177 U. S., 378, the supreme court of the United States refused even to entertain an application for the high writ of *habeas corpus*, on the ground that the party had delayed applying for it so long that his sentence would expire before it could be heard. And so this court, in the case of *Dixon* v. *Greene County*, where an injunction was sued out to prevent the removal of an old courthouse, refused to proceed on the ground that the parties had delayed having the writ served till after the house had been removed. *Dixon* v. *Greene County*, 76 Miss., 808, 809. See, also, *Planter's Compress* v. *Hanes*, 52 Miss., 469; *Mills* v. *Green*, 159 U. S., 653 *et seq.*

*Calvin Perkins*, for the appellee.

The circuit court of Hinds county never acquired jurisdiction of the subject-matter of the suit by the revenue agent, for the reason that he had no power to sue for the taxes of 1899 until the expiration of the fiscal year 1899. In was never the intention of the legislature by the act of 1894 to substitute the revenue agent for the tax collectors as to current taxes properly assessed, nor to give him the power to collect such taxes concurrently with the tax collectors. The statutes creating his office must be construed in connection with and as a part of the general revenue laws of the state, so as to harmonize the whole. As to what is meant by the term fiscal year, the following citations may be considered. Century Dictionary; Code 1857, p. 74; Code 1871, § 1666; Acts 1878, p. 81; Const. 1890, sec. 115; Code 1892, §§ 3746, 3747, 3748, 3751, 3753, 3754, 3771, 3782, 3788, 3789, 3794, 3801, 3802, 3811, 3832, 3840, 3850, 3884.

As to the official character, duty and powers of the state

revenue agent, see the following: Acts 1876, pp. 249, 252; Acts 1880, pp. 94, 98; Acts 1884, p. 29; *State* v. *Bias*, 65 Miss., 510; Acts 1890, p. 25; *State* v. *Adler*, 68 Miss., 487; *State* v. *Taylor*, 68 *Ib.*, 730; *State* v. *Thibodeaux*, 69 *Ib.*, 92.

The act of 1890 was brought into the code of 1892 as chapter 126, but § 4190 of that code was a new provision altogether, and the power given to the revenue agent by § 4191, to sue for "all past-due and unpaid taxes," was clearly limited by the words, "after the expiration of the fiscal year," contained in the former section. That the act of 1894 contains a corresponding limitation cannot be doubted. Acts 1894, p. 29, sec. 2; *Ib.*, pp. 29, 30, sec. 3.

If the contention of appellant be correct, that, under section 2 of the act of 1894, the revenue agent had the power, on December 16, 1899, the first day on which the tax collector could do any act towards coercing payment from the delinquent taxpayer, to receive or sue for the taxes of 1899, why did the legislature, in section 3 of that act, expressly provide that not until after the expiration of the fiscal year could the revenue agent do anything with regard to taxes which had not been assessed? Clearly section 3 is conclusive that the legislature understood that section 2 was to be construed as a part of the general revenue laws, and that it did not any more intend to authorize the revenue agent to take proceedings with regard to taxes which had been properly assessed during the fiscal year in which they became due than it did with regard to those which had not been assessed.

The position on our part is further supported by the fact that the act of 1894 did not repeal § 4200, code 1892, which requires the revenue agent to make the tax collector a party to all suits against delinquent tax debtors, for the purpose of having judgment rendered against him if it should appear that the failure to collect was caused by his wilful default. How can it be said that there had been any wilful default of the tax collector on December 16, 1899, with regard to the taxes of

1899 when there had been no instant of time in which he could have coerced payment? The taxpayers had until the close of the fifteenth day of December, 1899, to make voluntary payment, and not until the expiration of that day had the collector any power to enforce payment.

Although there are some verbal differences between the acts of 1890 and 1894, they are substantially the same, thus making the judicial constructions which have been placed on the act of 1890 directly in point. These acts are alike in omitting the express declaration contained in § 4190, code 1892, that the revenue agent may not sue for taxes which have been properly assessed until after the expiration of the current fiscal year. The act of 1894 does, however, as we have seen, contain an express declaration to that effect, so far as relates to taxes which have not been assessed. The above interpretation of the act of 1894 finds abundant sanction in the established rules of statutory construction. Bishop on Written Law, sec. 155; Suth. on Stat. Con., sec. 407; George's Dig., pp. 698–701; Endlich on Stat., pp. 33, 35; *Adams* v. *Bolivar County*, 75 Miss., 154.

Argued orally by *Edward Mayes, F. A. Critz*, and *R. C. Beckett*, for appellant, and by *Calvin Perkins*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The provisions of the act of 1894 (laws 1894, p. 29) are materially different from and far broader in their scope than the provisions of the act of February 22, 1890 (laws 1890, p. 25), and this difference makes wholly inapplicable to the point under consideration here, the former decisions of this court construing said act of 1890. Under that act, section 2, the revenue agent could only sue in the case provided in section 2, to wit: he could sue only "if it should appear that for any reason there had been a failure to enforce the law and collect all revenues due;" for there must have been a default on the part of the regular officer, and that must have been made to appear. No provision was made to make the officers parties

except in suits directly against them. In the code of 1892 it was provided, § 4191, that the revenue agent could not sue "until the expiration of the fiscal year in which the taxes ought to have been paid," and in § 4190 it was provided, "after the expiration of the fiscal year in which the taxes become due and payable, the revenue agent may assess and collect all past-due taxes, whether the same be caused by default of the assessor, tax collector, or taxpayer."

The act of 1894, section 3, in order to satisfy the objections pointed out in the Tonella case, 70 Miss., 710, provided, in section 3, that "after the expiration of the fiscal year in which taxes became due, if the revenue agent should discover that any property had escaped taxation by reason of not having been assessed, he should notify the tax collector," who should make the assessment, instead of making it himself, as had been unconstitutionally provided by § 4192 of the code of 1892. Section 4192 corresponds with section 3 of the act of 1894, both relating to the assessment of property which has escaped taxation, and the legislature did the significant thing of removing the inhibition against suit by the revenue agent "until after the expiration of the fiscal year," from § 4191 of the code, which relates to suit, and corresponds to section 2 of the act of 1894, and placing it in section 3 of the act of 1894, corresponding with § 4192 of the code of 1892. The result manifestly is that there is no limitation of time now provided as to when the revenue agent may begin suit, except that he must sue at a time when the taxes are "past due and unpaid." Taxes are past due the sixteenth day of December, the date when this suit was brought. There is nothing in the objection, therefore, that suit was prematurely brought. It may be observed, in passing, that the suits recently determined in this court, and affirmed by the United States supreme court, were all for current taxes, and were brought, as to procedure, just as these suits were brought, and no objections were urged, or could have been properly urged, as to the right of the revenue

agent to sue when and as he did.    The revenue agent having begun his suit before the sheriff began his procedure, and that suit being necessary, to determine whether the exemption was valid, every reason of law and of public policy maintains the right of the revenue agent to conduct these suits to conclusion, and collect the taxes without interference from· the sheriff.

The law nowhere authorizes a sheriff to sue for taxes.    It merely provides a summary remedy by sale of property where the property is liable for taxes.    See § 3850 of the code.    It does expressly authorize the revenue agent to sue for all "past-due and unpaid taxes."    Besides, the sheriff is a merely ministerial officer, both as sheriff and as tax collector.    It could not be expected of him to construe a statute expressly granting an exemption and determining judicially, as a court would, whether an exemption was unconstitutional or not, it never having been contemplated that a mere ministerial tax collector should undertake the tremendous responsibility involved in such exercise of judicial functions.    He might well plead, as a good and sufficient excuse for not selling the property of this railroad, that he found an express statute granting an exemption upon conditions, which conditions had been complied with by making the required affidavits.    Whether that express statute violated the supreme law of the land—the state constitution—conformity to which is essential to the validity of every legislative act, was a solemn judicial question for the courts to determine in a suit which he could not, and which the revenue agent could, institute for that very purpose.    Cooley on Tax. (2d ed.), 710; *Wiley* v. *Sinkley,* 179 U. S., 66; *Mayson* v. *Mo.,* 179 U. S., 333; Mechem on Public Officers, sec. 523.

The judicial ascertainment of that very question was the identical object of these suits brought by the revenue agent, of which this suit was one, and what is known as the main case, recently unanimously affirmed by the United States supreme court, had been finally decided by this court June 20, 1898, as to the exemption, and had been appealed to the United States

supreme court, and was there pending at the time the sheriff instituted these proceedings. Not only so, but the old sheriff, the predecessor of the appellee, was a party to that suit. It was pre-eminently proper and legally necessary that the sheriff should wait until the supreme court of the United States had finally determined whether the exemption was valid before he should proceed by way of sale. The judgment of the supreme court of the United States (*Yazoo, etc., R. R. Co.* v. *Adams,* 180 U. S., 1) denying the validity of the exemption affirmed the judgment of this court in *Yazoo, etc., R. R. Co.* v. *Wirt Adams,* 77 Miss., 194, and thus, for the first time, definitely declared the property of the railroad was liable to taxation. It is undoubtedly the duty of tax collectors, in the future, to make the taxes legally due hereafter by sale, if not paid when due, but they have no sort of concern with the collection of these taxes involved in the suits brought by the revenue agent, the very object of which was to determine whether the railroad company was liable or not.

Whether the taxes were "a debt," under § 3747 of the code of 1892, recoverable by proper action, depended on the validity of the exemption, and whether the exemption was valid could only be determined by a suit, which suit the revenue agent, and not the tax collector, could bring. Moreover, if this tax collector ever had any right to collect these taxes, his conduct has completely estopped him in this case. He did not sell on the first Monday of March, 1900, although this court had denied the exemption June 20, 1898. He was not waiting for the supreme court of the United States, for he got his order in June, 1900, before its decision was rendered. His predecessor accepted from the railroad payment in affidavits, and gave receipts in full, treating the exemption as valid, and in his answer to the injunction suit in the federal court for the taxes of 1898, stated that he had not proceeded, and did not intend to proceed, to collect these taxes, but would leave the whole matter to the revenue agent. This very tax collector did collect the levee

taxes, but did not collect the state and county taxes, although both were required to be collected in the same manner and at the same time.    Laws 1896, ch. 156, secs. 7 to 10, inclusive.

Whatever rights the new tax collector may have special to himself, he had no right to insist that the revenue agent did not properly bring this suit when and as he did.    If he says, on the one hand, that ignorance of the law would not excuse him, and that he was bound, therefore, to know that the statute granting this exemption was unconstitutional and void, he thereby conclusively admits himself guilty of wilful and deliberate default in not selling on the first Monday of March, 1900.    If, on the other hand, he takes the correct view, that he, a mere ministerial officer, was justified in acting on the face of the statute, manifestly he has no standing in his effort to interfere with the revenue agent, who went into the courts to have the validity of the exemption determined—a thing he could not do.    It is to be observed that this sheriff does not deny that he had notice of the suit instituted by the revenue agent; indeed, such denial would have been futile, because he must have known from his predecessor, and his acts in accepting the affidavits, as well as from the fact that a most determined effort was made to have these suits compromised by the legislature at its last session, a fact known all over the state, that such suit had been brought.

The order of the board of supervisors would be no protection to this tax collector if it had been his duty to sell, for the obvious reason that, in such case, he should have sold on the first Monday in March, 1900, and furnishes no excuse, in that view, for not having done so.    He would, on that showing, fall precisely within the principle of *Brougher* v. *Conley*, 62 Miss., 361.    The argument that the act of 1894 is unconstitutional is utterly untenable.

After the revenue agent, in the prompt and faithful discharge of his duty, had brought these suits, had conducted them through the inferior courts, this court, and the United States

supreme court, to a successful termination, after contests un-
paralleled for the matchless skill manifested by the able attor-
ney representing the defense, it was far too late for the appellee
to resort to this method of " reaping where he had not sown."

*The decree is reversed, cause remanded, with instructions to
the court below to reinstate the injunction and make it perpetual.*