WIRT ADAMS, STATE REVENUE AGENT, *v.* STONEWALL MANU-
FACTURING COMPANY AND STONEWALL COTTON MILLS.

1. TAXES. *Revenue agent. Bill to collect. Parties.* Laws 1882, *pp.* 84, 85; *Constitution* 1890, *secs.* 181, 279. *Code* 1892, § 4200.

   The county assessor and tax collector are not necessary parties to a bill by the state revenue agent to collect back taxes which were assessed but not collected because of a statutory or constitutional exemption from taxation claimed by the delinquent, since in such case there is no willful default or negligence by said officers, and § 4200, code 1892, is for that reason inapplicable.

2. SAME. *Tax collector. Willful default. Exemption. Code* 1892, § 4200.

   A tax collector is not in willful default in refraining from collecting taxes because of a statutory or constitutional exemption from taxation claimed by the delinquent, since he is without judicial authority to determine the validity of the exemption.

Statement of the case.

3. SAME. *Parties. Code* 1892, § 4200. *Prospective.*

Code 1892, § 4200, providing that in suits against delinquent tax-payers the assessor and tax collector shall be made parties, and authorizing a judgment against them in certain cases, is prospective only.

4. SAME. *Equity. Jurisdiction.*

A bill by the state revenue agent for the enforcement of a lien and the collection of delinquent taxes, which alleges that claims of exemptions are void, that defendants have entered into a fraudulent and collusive arrangement to defraud the public revenue, whereby the stockholders of an original corporation, one of the defendants, are now the stockholders of a new corporation, the other defendant, and the property of the former corporation, taxes against which are involved in the suit, was transferred to the latter, and that the purpose of organizing the new corporation under a different name on the expiration of the charter of the other was to create a corporation which could claim exemptions under the constitution of 1890, presents a case within the jurisdiction of equity.

FROM the chancery court of Clarke county.

HON. STONE DEAVORS, Chancellor.

Wirt Adams, state revenue agent, filed the bill in this case against the Stonewall Manufacturing Company and the Stonewall Cotton Mills in the chancery court of Clarke county to the October, 1898, term, in which he alleged that the Stonewall Manufacturing Company was chartered in 1870 as a corporation, such charter to last for twenty-five years; that from the date of its charter it had operated a large cotton factory in said county up to the date of the filing of this bill; that certain property was assessed as the property of the Stonewall Manufacturing Company upon its own return from the year 1886 to 1894, inclusive, sometimes under the head of the "Amount of Capital Stock Employed in Manufacturing and Merchandising," and sometimes under the head of "All Personal Property not Otherwise Mentioned," setting out the amount of the assessment for each year, and that the like assessments were made against the Stonewall Cotton Mills for the years 1895 to 1897,

inclusive, and taxes levied thereon which were never paid; that defendant has claimed exemptions from taxation for thirty years—first, under the act of 1872; second, under the act of 1882; and, third, under the constitutional ordinance of 1890; that upon the expiration of its charter, in 1895, the stockholders of that corporation, with the view of further enjoying exemption from taxation under said ordinance, it having for twenty-five years already enjoyed exemption, changed the name of the company to the "Stonewall Cotton Mills;" that the ownership was the same; that it pretended to transfer its property to the said Stonewall Cotton Mills; that said conveyance was not recorded, and that it was made with the intent to defraud the state and county of the taxes due, or that the debts of the old company were assumed by the new company; that the property was held in trust by the new company, and that the taxes so assessed were a lien on all the property, or if not a lien a debt against the company; that under the statute the debt constituted a lien, if the old company was dissolved; that discovery was necessary, and it was prayed for in the bill, and relief was prayed for in the way of a decree against the defendants for the amount of the state and county taxes. There is some further statement of the allegations of the bill in the opinion of the court. The Stonewall Manufacturing Company filed an affidavit to the effect that it had ceased to exist more than three years before the filing of the bill, and could not be sued, and a motion predicated on that affidavit was sustained to dismiss the bill as to it. The Stonewall Cotton Mills demurred to so much of the bill which seeks to recover the taxes assessed against the Stonewall Manufacturing Company, on the grounds that its charter had expired more than three years prior to the institution of this suit; that the taxes prior to 1893 were not debts, and not collectible by suit; that the Stonewall Manufacturing Company had not conveyed its property, and hence upon its dissolution its property was vested in its stockholders, and cannot be subjected in a suit to which they are not parties;

that the Stonewall Cotton Mills is not the owner of the property, and not personally liable for said taxes, and that all taxes prior to 1893 are barred by the statute of limitations. It demurred to the portion of the bill which seeks to recover of it the taxes for the years 1895, 1896, and 1897, on the ground that there is no lien on the property for the taxes. There was also interposed a general demurrer to the whole bill, because there is no equity on the face of the bill; it is multifarious; it fails to show that appellee is a corporation; the stockholders of the Stonewall Manufacturing Company are not made parties; it fails to show any assumption in writing by the Stonewall Cotton Mills of the debts of the Stonewall Manufacturing Company; the tax assessor and tax collector of Clarke county are not made parties to the bill. The demurrer was sustained, and the bill was, dismissed. From that decree complainant appeals.

*Fewell & Son,* for appellant.

The bill seeks to enforce a lien on the property for the assessed taxes. Such a lien could not be enforced in a court of law. Whether the taxes assessed as alleged were specified liens on the general property of the defendants, or only on the property named in the assessments, under § 3746 of the code, the assessment and levy constituted a debt under § 3747, and the appellant had a right, and it was his duty to enforce the debt. As to the property of the defendant, Stonewall Manufacturing Company, the debt so arising was a lien on its property by virtue of § 847 of the code. The allegation of the bill is that the property on which there was such lien is now in the possession of and claimed by the Cotton Mills, and the bill further alleged that the transfer by the Manufacturing Company to the Cotton Mills was made with the intent to defraud the state, a creditor of the Manufacturing Company. This is another ground of equitable jurisdiction. Another ground is the

discovery prayed for. Another is the avoidance of a multiplicity of suits to settle the whole controversy in one suit.

And still another ground is that there is no adequate remedy at law. If the taxes constituted a lien, if the property was conveyed with the purpose and intent alleged, or if the Cotton Mills held the property in trust as alleged, and if it assumed the debt of the Manufacturing Company, there was presented a case which laid within the peculiar province of a court of equity, especially when the necessity of and prayer for discovery is taken into consideration. We think it is obvious that the remedy at law was inadequate. If suit were brought against the Manufacturing Company, it would plead its nonexistence, or if it could be brought into court, and if it allowed judgment by default to be rendered against it, execution could not be levied on any property, for it would claim to hold no property. If suit were brought against the Cotton Mills, it would deny the alleged assumption of the debt, and complainant was entitled therefore to discovery, as the facts lay within the peculiar knowledge of the defendants.

The same may be said of other facts necessary to be proved. Discovery was particularly essential.

The court had jurisdiction resting upon the broad proposition that a court of equity could alone adequately and fully enquire into the allegations that in point of fact the defendants were the same persons, that the same persons who owned the stock of the Manufacturing Company owned the stock of the Cotton Mills; that the change was in fact only a change of name; that the Manufacturing Company had merely changed its name with the fraudulent purpose alleged, of cheating the state and county.

The time has passed when men may avoid and evade their debts through the dexterous use of, we may say, the "now you see it and now you don't see it" game, played through the names of corporations. There is no more reason why a corpo-

ration should be able to cheat its creditors by a change of name than that individuals should be able to do so.

A court of equity will enquire into the alleged fraud, and looking at the substance, and not being governed by the mere form of things, use its machinery to get at the real facts.

The bill is not multifarious. It had as well be argued that an ordinary bill which made A. a fraudulent vendor, and B. a fraudulent vendee, parties defendant, and alleged that A. has made a fraudulent conveyance to B., or that B. had assumed certain debts of complainant, would be multifarious. Under the strictest rules of equity pleading we think it clear that the bill would not be multifarious. If the jurisdiction lies in equity, both defendants were necessary parties. But certainly the bill is not multifarious under § 547 of the code.

The connection between the defendants is clearly shown by the bill. It does not lie in the mouth of the defendants to say the assessment was not legal. The assessment is alleged to have been based on the action of each of the defendants in rendering its property for assessment. The court will note the amendment to the original bill.

This cause does not come within the rules of law announced in the *Tombigbee Mills case, Adams* v. *Tombigbee Mills,* 78 Miss., 676. Here the defendant has enjoyed exemption from taxation for thirty years. This exemption was first predicated of the act of 1872, then under the act of 1882, then under the ordinance of the constitutional convention. It is alleged that it is the same company. If it has enjoyed the exemption as stated under the acts of 1872 and of 1882, it certainly could not, being the same company, have any exemption under the constitutional ordinance. We suppose it will, after the exemption of the ordinance shall have ended, change its name and claim another ten years, and so on *ad infinitum.*

We think it a wise policy to encourage factories, but it never was contemplated that the several exemptions that have been

granted should be cumulative, and thus be endless. If the Manufacturing Company came within the $50,000 clause of the act referred to, it is for the defendant to interpose that as a defense, and it was not necessary for the complainant to negative that idea. The rules of criminal pleading do not apply here.

According to the allegations of the bill, the Manufacturing Company practically, and in the eyes of a court of equity, continued to exercise its corporate powers after the expiration of its charter; if this was wrongful, the defendant cannot take advantage of such, its own wrong. Section 848 of the code cuts no figure in this controversy. That section does not effect the rights of creditors; it is not a statute of limitations; it is a law for the benefit of corporations. But if it be a statute of limitations, the state and county are not effected by it. The Manufacturing Company was never dissolved in the sense of § 847, code 1892; but if it was, its debts became a lien on its property by the very terms of the statute.

The action of the court in dismissing the suit against the defendant, Stonewall Manufacturing Company, on the motion of a person not a party to the suit, was erroneous. On the one hand the defendant, Stonewall Manufacturing Company, says: "You cannot sue me, because I do not exist;" on the other hand it says: "I can and do defend this suit." If it did not exist, how could it defend? What right has the affiant, Wainwright, in the case? What issue could be taken on his affidavit or motion? If the corporation was dead, it ought to remain dead; nothing had occurred to resurrect it.

Some authorities were adduced in the court below which seemed to support the proceeding on this point; but if the court should hold them applicable to this case, as we are confident it will not, this court will not follow them. The merits of the controversy could not be determined in any such summary way. Was the complainant to be turned aside from his suit to litigate with Wainwright the merits of the case? If it

shall turn out that the Manufacturing Company is really carrying on its business at the old stand under another name, no decree could be rendered against it, for it has been dismissed out of court.

If it be true that the change of name was made for the purpose and with the intent averred, and that the same persons who owned the stock in the Manufacturing Company owned the stock in the Cotton Mills, and that the Cotton Mills is in fact the same company, the court will apply the plain proposition that would be applicable to a natural person, that change of name cannot extinguish a debt.

*Buckley & Halsell* and *S. A. Witherspoon,* for appellee.

We submit that the bill cannot be maintained, unless there is some equity on its face that would have entitled the state or county to seek the aid of a court of equity. Laws of 1894, p. 29.

On reading the bill it is clear that it is based on the assumption that the complainant had a lien, for the enforcement of which he could come into a court of equity.

The sixth paragraph of the bill alleges that the taxes claimed became a lien on the property of the defendant. In the ninth paragraph of the bill the complainant details his futile efforts to recover of defendants in the circuit court, and then declares "that seeing that he could not enforce at law the lien of the state or county for said taxes, and that his remedy for that and other reasons is not adequate at law for the recovery of said taxes, has dismissed said suit out of the circuit court, and has come into a court of equity to enforce said lien, and to enforce the liability of said property held by the defendants to the payment of said taxes, and to recover said taxes." Again, in the eleventh paragraph of the bill, it is alleged that the property described in the bill "is subject to a lien for the payment of said taxes, and that said taxes are a charge upon said property." In the third prayer of the bill it is asked that from the

"date of the filing of this bill, complainant may have a lien upon said property of the said defendant for the payment of taxes; that said taxes may be decreed to have been a lien on said property from the time of the levy thereof." The fourth prayer of the bill asks that the said property may be decreed to be bound for said taxes, and that the same shall be decreed to be sold to pay said taxes. The amendment to the bill alleges that by the assessments the Stonewall Manufacturing Company became indebted to the state and the county, and that said debts became a lien on the property, and that said lien followed the property into the hands of the appellee upon the dissolution of the Stonewall Manufacturing Company.

Nothing could be plainer, therefore, than the theory of the bill, that its equity consists in the existence of a lien, which a court of equity has jurisdiction to enforce, and it is perfectly manifest from the allegations of the bill that the complainant has no lien on the property therein described. Indeed, we should not have taken the trouble to quote and collate all the allegations of the bill to show that its pretended equity was the enforcement of a lien, had it not been equally manifest from the bill that there was no lien to enforce. The only property described in the bill is real estate, and it is therein described in these words:

"The following described real estate lying in said county of Clarke, viz.: The northwest quarter of section five, township three, and range fifteen east; and a large brick factory building erected and being thereon, with all the machinery of every sort in said buildings, and of the divers houses and cottages on said lands." There is nothing in this description that could be personal property, except the machinery, and whether that is real estate or personal property, depends upon whether it is fixed to the freehold or not, but as the machinery is referred to under the head of "the following described real estate," and as it was certainly a material part of the factory, and as the description closes with the averment that the factory is a part

of the land, it is clear that the machinery must be fixtures, and hence a part of the land.

There is not an allegation in the bill to the effect that any of the taxes claimed were assessed against the real estate described. On the other hand, the second and third paragraphs of the bill show that every assessment of the taxes claimed from 1886 to 1897, both inclusive, were made, not on the land described in the bill, but either on the amount of capital invested in merchandising or manufacturing, or on the amount of all other personal property not otherwise mentioned. In plain and unambiguous language, therefore, the capital and personal property was assessed, and the lien for taxes is claimed on land. We affirm that there is no law fixing a lien on lands for taxes assessed against the other property. The only statute we can find creating a lien for taxes is § 470, code 1880, carried forward into the code of 1892, § 3746, providing that "all taxes assessed shall be a lien upon and bind the property assessed from the first day of February of the year in which the assessment is made." Under this section the taxes are a lien upon and bind the property assessed, and no other. If the owner is assessed with a horse, and also with a tract of land, each is bound for the taxes assessed against it, but if the owner pays the taxes assessed against the horse, and sells it, no one could contend that the revenue agent might enforce a lien on the horse for the taxes assessed against the land; and yet it is manifest that the bill in this case was filed upon the mistaken theory that the law fixes a lien on all the property of the taxpayer for the tax assessed against each part of his estate. That this proposition is untenable, we think, is too clear for discussion, and we are content merely to call the attention of the court to the mistaken theory of the bill to show that it was properly dismissed. There is not only no lien on the property described in the bill, but we submit that from the nature of the assessment there is no lien shown on any property. The statute fixing the lien for the taxes on the property assessed can have no

application to a case like this, where no particular property was assessed, but where the assessment is against the amount of capital invested, or all other personal property not otherwise mentioned. For illustration, if the corporation had a capital of $10,000, it might purchase with this capital and on a credit property to the amount of $50,000, and yet none of this property would be assessed, and then there would be no tax lien against any of it, because, according to the terms of the statute, there is no lien on any property except for the taxes for which it has been assessed. Suppose that included within this $50,000 worth of property purchased and owned by a corporation with a $10,000 capital there should be a horse, and after the first day of February such horse should be sold and delivered to another party, the state revenue agent could not seize the horse to enforce a lien for taxes assessed against the amount of capital invested in merchandising or manufacturing. There would be no lien on the horse, because no taxes had been assessed against it, and the purchaser, having the right to rest upon the assessment roll, would take the horse freed from all claim for taxes. Nor does the assessment against "all other personal property not otherwise mentioned" fix any lien upon any property, but only the amount of the valuation upon which the person assessed must pay taxes. A lien from its very nature must attach to some certain property, and if it depends upon an assessment roll to create it, such roll must describe and designate the property. The tax lien is against the property assessed, and if the assessment fails to show what property was assessed, then it must also fail to show any lien against any property. How could any court enforce a lien upon "all other personal property not otherwise mentioned?" Certainly it could not be done in a bill like this, which fails to allege what property was mentioned on the tax list or on the assessment roll. If the bill had set this out, and then gone further and shown by proper description what other property the Stonewall Manufacturing Company owned on the first day of February of the year in which

the assessment was made, then it might be said that the appellant had a lien on such property. Whether such other property not otherwise mentioned consisted of hogs, cows, goats, cotton seed, or woolen cloth, the bill leaves us in the dark. Certain it is that "all the other property not otherwise mentioned" was not the property described in the bill, for that is expressly shown to be land. And we, therefore, assert that there is no lien set forth in the bill for the chancery court to enforce, and hence there is no equity in the bill. The whole suit is a huge mistake as to the existence of a lien. It is a myth, a mere fancy. Indeed, on the trial of this case in the court below the lien theory of the bill was so clearly demonstrated to be a mistake that the appellant switched off on to an entirely new theory of the equity of the bill, and argued that it was a suit to cancel a fraudulent conveyance, and this theory of the equity of the bill is worse than the other, because it has no better foundation in fact than the lien theory, and it is contrary to the expressed allegations of the bill. Now, if this is a suit to cancel a fraudulent conveyance, which, of course, would be a matter of equity cognizance, then who made the conveyance, to whom was it made, what was its date, what was the pretended consideration of it, and what property was described in the fraudulent conveyance? No answer to a single one of these questions can be found in all the allegations of the bill. On the contrary, the bill alleges that there has been no conveyance of any kind, and that all of the property of the Stonewall Manufacturing Company is still owned by it. In the seventh paragraph of the bill we find these words: "That there has been no deed or transfer of the property of said Stonewall Manufacturing Company to the said Stonewall Cotton Mills, or if such deed or transfer has been made, the same is not recorded in the record of deeds of said county." This allegation of the bill that there has been no deed or transfer, is admitted by the demurrer, and precludes the contention by either party that this is a suit to cancel a fraudulent conveyance. The bill then charges that if mistaken

in the allegation that there has been no transfer or deed, then it charges that "said transfer or pretended deed and change of name by the said Stonewall Manufacturing Company to the Stonewall Cotton Mills was without lawful consideration, and was made with the intent to defraud the state and county out of said taxes. An allegation like this, made on the condition that the complainant is mistaken in the positive allegation that there has been no deed or transfer, cannot amount to anything when the bill is demurred to and the positive and unconditional averment that there was no deed is admitted. It amounts to nothing, because there is nothing in the record to show that the complainant was mistaken in his unconditional averment, but, on the other hand, his unconditional averment is admitted to be true.

But even if the bill had not alleged that there had been no deed or transfer executed or recorded, his allegations that said transfer or pretended transfer and change of name would be wholly insufficient for a creditor's bill. It is not a transfer and change of name, but a transfer and change of property that a court of equity can cancel. If the Stonewall Manufacturing Company had its name changed to that of the Stonewall Cotton Mills to defraud the state and county out of taxes, this would not support a creditor's bill. When a creditor's bill is filed, the complainant obtains a lien on all the property embraced and described in the fraudulent conveyance, but how could the complainant get any lien on the property embraced in the fraudulent conveyance when there was only a change of name and no property whatever described or referred to. At least the bill fails to allege that the land described in the bill was embraced in any fraudulent conveyance, and that the complainant has, by filing his bill, obtained any lien on the land. On the other hand, the bill claims a lien on said land from the time of the levy of said taxes. Nor does the bill describe any other property as embraced in any fraudulent conveyance. In the eleventh section of the bill we find these words: "Complainant

avers and charges that the said property now pretended to be owned by said Stonewall Cotton Mills is really and in fact owned by the Stonewall Manufacturing Company, and is held by the said Stonewall Cotton Mills as the property of the said Stonewall Manufacturing Company;  .   .   .    that there having been no valid transfer of said property from the Stonewall Manufacturing Company to the Stonewall Cotton Mills, the latter holds said property in trust for and as assets of said Stonewall Manufacturing Company, and if said transfer was ever made, it is void as to complainant." This is certainly not the language of a creditor's bill. If there was a deed of conveyance of the property from one corporation to the other, then, whether fraudulent or *bona fide,* it was valid as between the parties to it, and the existence of a fraudulent conveyance is negatived by the allegation that the property "is really and in fact owned by the Stonewall Manufacturing Company." Its existence is also negatived by the allegation that the Stonewall Cotton Mills holds the property "as the property of the Stonewall Manufacturing Company." Its existence is negatived by the allegation that "there having been no valid transfer of said property from the Stonewall Manufacturing Company to the Stonewall Cotton Mills, the latter company holds the said property in trust for and as assets of the Stonewall Manufacturing Company," for a fraudulent vendee certainly does not hold the property conveyed in trust for or as assets of the fraudulent vendor. The fraudulent vendee may hold property in trust for the creditors of the fraudulent vendor, but this is not the language of the bill. Again, this eleventh paragraph alleges that if such transfer was made, it was void because it was not recorded. This is undoubtedly true, and shows, as all the other allegations of the bill show, that there was no such transfer. If such transfer was made, why should it be kept from the records, and thereby rendered void, as the bill says?

We deny that a creditor's bill can be maintained to set aside a fraudulent conveyance on allegations that it has never been

recorded, is void, is entirely secret and hidden, and which exists entirely in the suspicious fancy of the complainant. The object of a creditor's bill is to remove the fraudulent conveyance as an obstacle in the way of complainant collecting his debt, and when in this case the complaint only makes conditional allegations, designed manifestly to meet an anticipated defense of a conveyance, and it turns out that the defendant puts up no such defense, but admits that there has been no such conveyance, then such allegations are wholly insufficient to inject into the bill an equity to take the place of the one on which the complainant has founded his case from one end of the bill to the other.

Again, in section C of the second paragraph of the bill, the complainant calls on the defendant to answer whether or not there had been any deed or transfer of the property, and, if so, to give the date, the consideration and a copy of such deed, showing clearly that the complainant knows of no such deed, and that the existence of such a deed has never been an obstacle in the way of his collecting his claims. And, finally, the bill nowhere prays that any fraudulent conveyance be set aside and canceled, nor that any property embraced in such fraudulent conveyance be condemned to be sold to pay the debts claimed. In truth, the creditor's bill theory is an afterthought, upon which the complainant fell back when he discovered that he had no tax lien.

If now then there is no tax lien to enforce, and if there is no fraudulent coveyance on which to maintain a creditor's bill, where is the equity of the bill? It has none, and it is simply an action of *assumpsit* to recover a debt, and should have been prosecuted, as it was originally instituted, in the circuit court.

The bill is clearly multifarious. The alleged taxes for the years 1886 to 1894, inclusive, constitute a separate and distinct claim against the Stonewall Manufacturing Company, and existed before the appellee was created. The appellee is not only not liable personally for these taxes, but, under the allega-

tions of the bill, it is not the owner of the land described in the bill, and hence it is not interested in the question of these taxes. On the other had, the alleged taxes for the years 1895 to 1897, assessed against the appellee after the Stonewall Manufacturing Company had ceased to exist, for which it could not be possibly liable, and after all its property had by virtue of its dissolution been vested in its stockholders, constitute a claim in which the Stonewall Manufacturing Company has no interest. To combine these separate, independent, and unconnected claims in the same bill made it multifarious and subject to demurrer on that ground.

The bill fails to show that the appellee is a corporation. Its allegations on this subject are conflicting and uncertain, and it is impossible to tell therefrom what position the appellant intends to take on this question. The eighth paragraph alleges that the persons owning the capital stock of the Stonewall Manufacturing Company changed the name of the said corporation, or organized another corporation under the name of the Stonewall Cotton Mills, but why they did the bill fails to tell us. If they simply changed the name of the Stonewall Manufacturing Company, which ceased to exist on April 2, 1895, and called the dissolved and dead corporation by a new name, the bill is demurrable because there is really no defendant, for naming a corpse will not bring it to life. And, if the stockholders organized a new corporation, as is alleged in the alternative, still there is no intimation that they had the assistance or authority of the legislature or of the statutes, which would be necessary to give it corporate existence. It cannot be implied that these organizers of the new corporation acquired a charter or secured the sanction of the governor, attorney-general, and secretary of state, so as to create an artificial person, because in the same paragraph it is charged that "the Stonewall Cotton Mill is but another name for the Stonewall Manufacturing Company." If, as charged, the only difference is in name, then neither of them has any corporate existence, because cer-

tainly one of them is defunct and dead.   But the same paragraph further charges that the same persons who owned the capital stock of the Stonewall Manufacturing Company also owns the stock of appellee.   It does not appear that the appellee has capital stock, but whether it is the same or different stock, and represented by the same or different certificates as those of the Stonewall Manufacturing Company, we are left in the dark; and whether the capital stock of the appellee was that of a corporation, joint stock company, or copartnership no one can tell from the bill; and if a decree were made sustaining the bill, the court which makes the decree will be unable to tell what sort of concern, whether an old defunct, joint stock company, or a copartnership, it has decreed against.   We submit, therefore, that the demurrer was properly sustained, on the ground that the bill does not show what the appellee is.

The bill shows that the assessments of the property taxes sued for are void.   Under §§ 473 and 498, code of 1880, and §§ 3750 and 3758 of the code of 1892, the assessment of a corporation should be not on its property, but on the market value of its capital stock, unless the proper officer has failed to render the required statement, in which case the assessment is on the entire capital stock authorized by the charter.   In the case of *State* v. *Simmons,* 70 Miss., 485, 502, it was held that the statutes required the capital stock of corporation to be taxed at its market value, and if, as the bill alleges, no taxes have ever been paid by the appellee and the Stonewall Manufacturing Company, then the proper steps to take is to assess the capital stock, and not to sue for taxes illegally assessed.   The fact that the assessments were made on the printed lists furnished to taxpayers, as provided by § 3761, code 1892, under the head of "Capital Invested in Merchandising and Manufacturing," and of "All Other Personal Property not Otherwise Mentioned," only shows that the assessment were made in ignorance of the law, for that has reference manifestly to the capital of natural persons invested in merchandising and manufactur-

ing, and could not refer to corporations, which are not taxed upon their property or upon their capital, but upon the market value of their capital stock.

Every pleading must be construed most strictly against the pleader, and if we take all the allegations of the bill and construe them in the light of the law, it will appear that the appellee and the Stonewall Manufacturing Company enjoyed an exemption from the taxes sued for.

Sections 1 and 2 of the act of March 9, 1882, laws 1882, pp. 84, 85, declares that all cotton factories shall be exempt from taxation for ten years, and all extensions of such factories which cost over $50,000, when the cost of such extension shall be sworn to before a magistrate, and filed with the auditor. The bill shows that the factory of the appellee was constructed prior to this act, and hence was not exempt. But it alleges that the capital invested in manufacturing, and in all other property not otherwise mentioned, for which it claims the taxes sued for was for each of the years 1876 to 1891, inclusive, $75,000; and for each of the years 1892 and 1893, $148,266.13; and for the years 1894 to 1896, inclusive, $73,266.13, and for the year 1897, $268,936.44. This bill also states that the appellee and the Stonewall Manufacturing Company claimed this property as exempt, and it shows that the revenue officers acquiesced in this claim of exemption for all these years, and for this reason the alleged escape from taxation occurred. The bill does not mention the act of 1882, but this is the only law under which the exemption claimed could have been made. Inasmuch as the factory was built before the act of 1882, the alleged exemption of $75,000 for the years 1876 to 1891, inclusive, must have been on account of an extension of the factory under the act of 1882.

The bill was clearly demurrable on the ground that the stockholders of the corporation and the tax assessor and tax collector of Clarke county were not made parties. The ninth ground of the demurrer is that the stockholders should have been made

parties.    The bill states that the Stonewall Manufacturing
Company was chartered in 1870 for twenty-five years, and it
therefore ceased to exist in 1895.    Its charter was passed by the
legislature under date of April 22, 1870.    See laws of 1870,
p. 462.

The Stonewall Manufacturing Company, therefore, ceased to
exist on April 22, 1895.    Now the bill alleges that it made no
transfer of its property, and therefore upon the death of the
corporation all of its property became vested by law in its
stockholders on the 22d day of April, 1895.    Sec. 847, code
1892.    It is clear, therefore, that no decree could be made
affecting this property in the present suit, because its owners
are not before the court.

The sixteenth ground of demurrer is that the tax assessor
and tax collector of Clarke county should have been made
parties.    Section 4200 of the code of 1892 expressly provides
that the assessor and collector shall be made parties in all
suits for the collection of taxes, and provides the contingency
upon which judgment shall be rendered against them.    This
section is not repealed by the act of 1894, sec. 7, p. 31, laws
1894.    For want of proper parties the bill was therefore de-
murrable, and the decree should be affirmed on this ground, if
on no other.

Argued orally by *S. A. Witherspoon,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The facts alleged in this bill disclose a most remarkable case,
one falling peculiarly within the jurisdiction of the chancery
court, pre-eminently a case for full and complete discovery.
We do not think the tax assessor and tax collector of Clarke
county necessary parties to this bill.    Section 4200 of the code
of 1892 is applicable where there has been a willful default on
the part of such officers to assess or collect, respectively, the
taxes.    Wherever the case made by the bill and admitted by

the demurrer plainly shows that there could have been no willful default on the part of the assessors and collectors, the statute can have no application, and such is the case before us. Manifestly the provision of this § 4200 could not be applied retrospectively to all the various tax assessors and tax collectors, and the multitudinous sureties on their bonds, since the Stonewall Manufacturing Company was established in 1870, for two reasons: First, because the statute, on its face, is prospective only; second, because the tax assessors and tax collectors cannot be held guilty of a willful violation of a law, not passed at the time at which they acted. And it is equally plain, under the principles announced in *Railroad Co.* v. *West,* 78 Miss., 789 (29 So., 475), that the tax assessors and tax collectors, since the adoption of the code of 1892, have not been guilty of any willful default in this matter, on the facts of this case. It plainly appears from the bill, so far as the assessors are concerned, that the property involved was returned by the appellees on lists furnished by the assessor, and by the assessor duly assessed. The effort here is not to back-assess any part of the property of these two corporations, but simply to compel them to pay the taxes according to the sworn assessments that the corporations themselves returned—the bill charging also that a lien exists for these taxes, enforceable only in the chancery court. The assessors are not charged with any default, but, according to the allegations of the bill, fully discharged their duty. So far as the tax collectors are concerned, the bill does not charge them with any default, but plainly avers that the reason why the taxes have not been collected is that up to the adoption of the constitution of 1890 exemption was claimed from taxation under an act of the legislature passed presumably in 1882 (Laws 1882, p. 84), and under the ordinance of the constitution of 1890 after that date. As held in *Railroad Co.* v. *West, supra,* it was not the duty of the tax collector, acting in a mere ministerial capacity, to pass upon the validity of the exemption claimed, either under the statute or the constitution.

That is a judicial question. A willful default cannot be predicated of the failure of a tax collector to collect taxes from a corporation when it exhibits an act of the legislature or a provision of the constitution purporting to exempt the property from taxation. The general scope of this bill is that these claims of exemption on the part of both corporations, whether under a legislative enactment or constitutional ordinance, are void, and that the taxes due from the Stonewall Manufacturing Company are liens charged upon the property of that corporation in the possession of the Stonewall Cotton Mills, which property, it is alleged, still owes such taxes, though the corporation is now known as the Stonewall Cotton Mills, which has succeeded it; and it is further charged that there has been a fraudulent and collusive arrangement entered into between the two corporations, with the view of defrauding the public revenues out of an amount of taxes aggregating about $14,000; it being charged that the same persons that owned the capital stock of the Stonewall Manufacturing Company also own the capital stock of the Stonewall Cotton Mills, and that the change of name from the Stonewall Manufacturing Company to the Stonewall Cotton Mills was a part of such fraudulent scheme, the purpose in this respect being to claim that the Stonewall Cotton Mills was a factory established after the constitution of 1890 went into effect, whereas in truth and in fact the property of the Stonewall Manufacturing Company was the property of the Stonewall Cotton Mills, the stockholders of the one had become the stockholders of the other, and the superintendent or manager of the property of the Stonewall Manufacturing Company had continuously managed the property of the Stonewall Cotton Mills; and it is further averred that, if there was any transfer or conveyance by the Stonewall Manufacturing Company to the Stonewall Cotton Mills of its property and effects, no record of it appears, and that an essential feature of such transfer was an assumption by the Stonewall Cotton Mills of these particular taxes due on the property of the Stonewall

Manufacturing Company; and it is further averred that the
Stonewall Cotton Mills has not paid any of the taxes due by it
since its organization under the changed name. If the facts
thus alleged are true, it must be obvious that a plain case for
equity jurisdiction, on more grounds than one, has been shown,
and no amount of subtle and refined reasoning can obscure the
right of the complainant to an answer on the facts.

*Decree reversed, demurrer overruled, and cause remanded,
and leave given to answer within thirty days from the date of
the filing of the mandate in the court below.*